ALMACS INC., Plaintiff,

v.

Gerald DROGIN, in his capacity as General Partner of Wamp Associates, L.P., a Limited Partnership and F.W. Woolworth Co., d/b/a Rx Place Store, Defendants.

Civ. A. No. 90–0492P.

United States District Court,
D. Rhode Island.

Aug. 23, 1991.

Stephen A. Rodio, Hinckley, Allen, Snyder & Comen, Providence, R.I., for plaintiff Almacs Inc.

Richard A. Boren, Licht & Semonoff, Providence, R.I., for defendant Gerald Drogin.

Steven W. Raffa, Blish & Cavanagh, Providence, R.I., for defendant F.W. Woolworth Co.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

In accordance with my June 28, 1991 Opinion 771 F.Supp. 506 in the above captioned case, Rx Place was required to limit its display of food and food products to 2,500 square feet. To facilitate this, the parties submitted a floor plan designating the areas that could be devoted to such products. One problem remains. The parties currently are in disagreement over the definition of food and food products. Specifically, they disagree as to whether diet aids in the form of meal replacements, i.e. shakes, liquids, snack bars, are food and food products. Rx Place contends that meal replacements are health and beauty aids and excluded from the 2,500 square foot restriction. Almacs does not agree, arguing that these products are food. Both parties do agree that diet aids in the form of appetite suppressants, generally pills, are health and beauty aids and, therefore, not restricted.

At my request, the parties have submitted copies of all relevant evidence from the trial relating to their dispute. Neither side materially challenges my basic definition of food and food products as "any nonmedicinal edible products meant to be consumed by human beings." *Almacs v. Drogin*, 771 F.Supp. 506, 508–509 (D.R.I.1991). In fact, Rx Place's expert, Dr. Howard L. Green, agreed, on cross-examination, that food is "something that human beings consume." (T. 5/8/91 at 56)

The testimony on the specific issue now before me, however, is not as clear. The most pertinent statement was made by Almacs' vice-chairman, Philip Segal. He noted that diet food supplements such as "Slim Fast" would be considered food by the supermarket industry. (T. 5/2/91 at 56) The expert testimony on the subject was less direct. Almacs' expert, Howard S. Dubin, when asked to list what products are categorized as health and beauty aids responded, in part, "dieting aids, that would be appetite suppressants." (T. 5/6/91 at 12) He never specifically addressed the categorization of diet aids that are meal replacements. However, I can infer from his statement that he would not have included meal replacement dieting aids in the same category. Finally, Dr. Green testified that he would include "diet aids" in the health and beauty aid category. There was no indication in the testimony as to what specific products he would include in the diet aids category. (T. 5/8/91 at 17–18)

Rx Place also submitted two supermarket industry indexes in support of its position. These indexes were introduced into evidence at trial. The first, *Supermarket Business'* Consumer Expenditure Study ("CES"), categorizes all diet aids, including meal replacements, as health and beauty aids. The second, SAMI's Food Operator Participant Executive Review ("SAMI"), lists meal replacements under the sub-heading "diet *foods*" in the dry groceries category (emphasis added). Rx Place argues that I should rely only on CES as SAMI did not exist in 1967 when the lease that is at the heart of this controversy was signed. In the context of the specific problem before me, however, that argument carries little weight because the disputed products themselves did not exist in 1967. (T. 5/8/91 at 18, Testimony of Dr. Green) I, therefore, consider the indexes as circumstantial evidence and give them both equal weight.

Because the evidence is non-conclusive, I turn, for guidance, to my original definition of food and food products. Under a common sense approach, there is no doubt that shakes, liquids and snack bars are "non-

medicinal edible products meant to be consumed by human beings." Even the fact that Rx Place calls these products "meal replacements" strongly suggests that such products are, in fact, food. I heartily agree with Almacs' assessment of the situation; defining meal replacements as food "is the only logical interpretation, since an expanded definition of the term 'diet aid' could be virtually anything, from low fat yogurt to low-calorie canned peaches to Weight Watcher's frozen dinners." I, therefore, find that diet meal replacements are food and food products and must be included in the 2,500 square foot restriction. Appetite suppressants, as the parties agree, are unrestricted health and beauty aids.

SO ORDERED.